OPINION
{¶ 1} The appellant, Harold F. Douglas ("Harold"), appeals the judgments of the Marion County Common Pleas Court, Family Division, terminating his parental rights, placing his one minor child, Douglas D. Douglas ("Doug"),[1] in a planned permanent living arrangement, and placing his other minor child, Jeremy Douglas ("Jeremy"),[2] in the permanent custody of Marion County Children's Services ("the agency").
 {¶ 2} The Douglas family has a long history with the agency. To best understand the order of events, we will address two separate timelines, one relating to Doug, and the other relative to Jeremy. Harold has had sole custody of Doug and Jeremy since 1993. In April 2002, the agency filed a complaint against Harold. Doug was removed from Harold's custody and placed with a paternal uncle. In August 2002, the trial court found Doug and Jeremy to be dependent children, but returned them to Harold's custody. Doug remained in his father's custody until April 10, 2003. At that time, a paternal uncle assumed temporary custody of Doug. On November 10, 2003, Doug returned to Harold's custody, and remained with his father until August 2004. Doug was again placed with a paternal uncle, and on November 16, 2004, the agency assumed temporary custody. The trial court extended temporary custody on February 15, 2005, and on March 3, 2005, children's services filed a motion requesting permanent custody of Doug.
 {¶ 3} As to Jeremy, when the agency filed its original complaint in April 2002, Jeremy was permitted to stay in his father's custody. On April 10, 2003, Jeremy was removed from Harold's custody and placed in the temporary custody of the agency. Jeremy returned to Harold's custody in February 2004, but because Harold and Jeremy became involved in a domestic altercation, Jeremy was placed in the temporary custody of the agency in March 2004. At that time, the agency filed a new complaint as to Jeremy. The trial court found Jeremy to be an abused child in August 2004. The court extended temporary custody on February 15, 2005, and on March 3, 2005, the agency filed a motion requesting permanent custody of Jeremy.
 {¶ 4} On July 18, 2005, Doug and Jeremy's mother, Sherri Caskey ("Sherri"), filed a motion for custody of both children. On August 11, 2005, she filed a motion requesting the trial court to conduct an in camera interview with each child. The guardian ad litem filed his report and recommendation as to each child on August 31, 2005. The trial court held a permanent custody hearing on August 23, 2005.[3] The trial court heard testimony from Jerry Whaley ("Whaley"), a caseworker for the agency; Shelley Parker ("Parker"), the boys' foster mother; Harold; and Sherri. The court admitted eleven exhibits into evidence. On January 31, 2006, the trial court filed its judgment entry, terminating Harold and Sherri's parental rights. The trial court ordered Jeremy into the permanent custody of the agency and placed Doug in a planned permanent living arrangement. Harold appeals the trial court's judgment and asserts the following assignment of error:
The trial court erred in determining that there was clear andconvincing evidence produced at the hearing that it was in thebest interest of the children to permanently terminate parentalrights and grant permanent custody to the movant, and that otherfindings warranted the granting of permanent custody.
 {¶ 5} In support of his assignment of error, Harold essentially contends that the evidence adduced at hearing is insufficient to support the trial court's judgment. Harold contends he has been the children's primary care-giver; that he has a supportive family to help with the children; that he has maintained regular contact with the children; that he has been employed since his release from prison; and that he has earned his GED. In response, the agency contends there is clear and convincing evidence to support the trial court's findings. The agency contends that Harold does not have a permanent place to live; he has been out of prison only a short time; he has not attended AA meetings; he has used cocaine; and he has domestic violence convictions, Jeremy being the victim in one of those cases.
 {¶ 6} Initially, we emphasize the seriousness of this case. Parents have a fundamental right to care for and have custody of their children. In re Shaeffer Children (1993),85 Ohio App.3d 683, 621 N.E.2d 426 (citing Santosky v. Kramer (1982),455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599). The United States Supreme Court has noted, "[i]t is cardinal with us that the custody, care and nurture of the child reside first in the parents[.]" Stanleyv. Illinois (1972), 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551
(citation omitted). Therefore, permanently removing a child from his or her parents' care is an alternative of last resort, sanctioned only when the welfare of the child requires such action. See In re Wise (1994), 96 Ohio App.3d 619,645 N.E.2d 812; In re Cunningham (1979), 59 Ohio St.2d 100,391 N.E.2d 1034. The "[p]ermanent termination of parental rights has been described as `the family law equivalent of the death penalty in a criminal case.' Therefore, parents `must be afforded every procedural and substantive protection the law allows.'" In reHayes (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (quotation omitted).
 {¶ 7} When the agency files a motion for permanent custody, the trial court must hold a hearing and make several findings before terminating parental rights. At the hearing, the trial court must determine
by clear and convincing evidence, that it is in the bestinterest of the child to grant permanent custody to the agencythat filed the motion for permanent custody and that any ofthe following apply * * *
 (d) The child has been in the temporary custody of one or morepublic children services agencies or private child placingagencies for twelve or more months of a consecutive twenty-twomonth period ending on or after March 18, 1999.
R.C. 2151.414(B)(1) (emphasis added). In determining the best interest of a child, the trial court must consider the non-exclusive list of factors found in R.C. 2151.414(D). While a trial court is not specifically required to list each factor considered under R.C. 2151.414(D), the record must indicate that all of the necessary factors were considered. See In reHershberger and Smith, 3rd Dist. Nos. 1-04-55 and 1-04-61, 2005-Ohio 429, at ¶ 28.
 {¶ 8} In reviewing a trial court's decision made under the clear and convincing standard, an appellate court must "examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Id., at ¶ 18 (citing Cross v. Ledford (1954), 161 Ohio St. 469,477, 120 N.E.2d 118). Clear and convincing evidence has been defined as:
"that measure or degree of proof which will produce in themind of the trier of facts a firm belief or conviction as to theallegations sought to be established. It is intermediate, beingmore than a mere preponderance, but not to the extent of suchcertainty as is required beyond a reasonable doubt as in criminalcases. It does not mean clear and unequivocal."
Id. (quoting Cross, supra at 477 (citing Merrick v. Ditzler
(1915), 91 Ohio St. 256, 110 N.E. 493)). However, the trial court "is in the best position to observe the demeanor of the parties, to access [sic] their credibility, and to determine the accuracy of their testimony." In re Adoption of Sours, 3rd Dist. Nos. 16-02-16, 16-02-17, 2003-Ohio-3583, at ¶ 10 (citing Holcomb,
supra at 367).
 {¶ 9} Although the trial court did not specifically delineate the statutory factors it considered, it is clear that the trial court did consider R.C. 2151.414(D), and there is clear and convincing evidence in the record to support the trial court's findings. The trial court found that Harold had been the children's primary care-giver; that Harold had "been in a community-based correctional facility for domestic violence and later was placed in a state institution based on his convictions for use of drugs and drug paraphernalia" while the children were in out-of-home care; that Harold did not attend AA meetings because he felt he could handle the problem himself and because he thought fishing was a better treatment than AA; and that Harold had failed to maintain housing for himself and the children. The trial court made three different findings as to Harold's living situation. First, the trial court found that Harold "has not maintained housing". Second, the trial court found that Harold was living with his brother and did not have furniture or housing for the children. Finally, the trial court found that Harold "is currently living with Rhonda Filo with whom he has some other children and intends to take the children there at her home.[sic]" Harold's testimony indicates that he used to live with Rhonda Filo, but that he currently lives with his brother, and he testified that the children might stay there. While the facts may have been misstated, the conclusion that Harold does not have living arrangements for the children is supported by clear and convincing evidence. The trial court also noted Harold's convictions for domestic violence and that Jeremy was the victim in one case.
 {¶ 10} The trial court held an in camera interview with the children. The court found that Doug wished to remain in foster care because he felt he had bettered himself in that situation. Harold also testified that Doug wished to remain in foster care, and he supported that decision. As to Jeremy, the court found that he wished to live with Sherri; however, it refused to place Jeremy in her custody due to her drug problems and Jeremy's immaturity and behavioral problems. On this record, there is clear and convincing evidence to support the trial court's determination that Doug be placed in a planned permanent living arrangement and that the agency take permanent custody of Jeremy.
 {¶ 11} The judgments of the Marion County Common Pleas Court, Family Division, are affirmed.
Judgments affirmed.
 Rogers and Shaw, JJ., concur.
[1] Doug was born on February 16, 1989.
[2] Jeremy was born on December 18, 1990.
[3] The transcript mistakenly indicates the hearing occurred on August 23, 2006.